Thank you. Good afternoon. Good afternoon, Your Honor. Good afternoon, Your Honor. Ms. Bartolucci, are you ready to proceed? Yes, I am. You may. As you noted, my name is Elizabeth Bartolucci and I represent the plaintiffs' appellants, Brent and Deanna Trompler. Your Honors, of all the case law that's been cited by the parties, the rule that is most relevant and aptly stated in the Bellevue v. Hilton Hotels case is this. If the undisputed evidence permits more than one conclusion or inference, including one unfavorable to the moving party, summary judgment should be denied. Put another way, if the facts permit even one inference that favors the non-moving party, summary judgment should be denied. That is the situation here where the plaintiff's expert has opined and the circuit court in fact agreed the facts permit an inference that the deteriorated condition of the railroad crossing approximately caused Mr. Trompler to lose control of his vehicle. This finding alone is dispositive. The facts, as acknowledged by the circuit court, allow for one inference that is unfavorable to the moving party and on that basis alone, summary judgment should have been denied. The fact that the circuit court and defendant have suggested possible alternative causes of this accident is irrelevant. First, there's no evidence to support any of the alternative causes that have been raised and as Bellevue and many other cases instruct, if one possible inference is available based on the undisputed evidence, any other potential causes aren't relevant in the summary judgment context. And as the court knows, proximate cause presents a fact question that by and large should be decided by a jury. The only time the jury should not have that opportunity is if the plaintiff would never be entitled to recover under the facts. Proximate cause becomes in fact a law question, a question of law, only when there can be no differences of judgment from reasonable men on the inferences that can be drawn from the evidence. Here, we do not think the evidence is unclear at all, but if it is unclear at all, it definitely must be decided by a jury. First, the defendants have not identified one fact that is in dispute. They have not challenged any fact regarding how this accident happened, how Mr. Trompler's sweeper came into contact with the railroad crossing tracks, how the accident actually happened. So their argument is based on the premise that even given all the undisputed facts, there's not enough, which is not a good word to use in the summary judgment context, sufficiency and enough are words we should look out for because they suggest the court's being asked to weigh evidence. So defendant is asking the court to find that the evidence Mr. Trompler has produced, even though it's undisputed, is not enough to let him go to trial. And that's where we take issue with the circuit court's decision. We think there was absolutely sufficient evidence to allow Mr. Trompler to take his case to trial and the bases for the circuit court's decision were just legally flawed. Yes. Do you agree that the evidence you're relying upon is circumstantial? I agree there is some circumstantial evidence. However, I do believe that photographic evidence of the condition of the railroad crossing is direct evidence of its condition. The only circumstantial evidence is that, you know, we have direct testimony from Mr. Trompler about the sensations he felt, which kind of testimony has proven very important in cases like this. It was very important in the Cabernet case. It was very important in the Belarive case. It's very important if a plaintiff can describe sensations they feel. So he has described the sensations he felt applied to direct evidence of the condition of the crossing lead to inferences that together, I mean, I don't even think it's really circumstantial evidence. But as I noted, unless he had a glass bottom in his street sweeper or there was a video recording the incident, there wouldn't really be direct evidence of exactly what transpired under his vehicle the minute he made this crossing. And that's why I think the case is really similar to the Procease case, which we cite, although it's an unpublished decision, I do think its facts are very similar in that there the defected issue was submerged under a puddle of water so that nobody could really see what happened when the plaintiff tripped and fell there. But the court held that the plaintiff's or the decedent, I'm sorry, the plaintiff's decedent, nobody could see what happened when she traversed through this puddle. But the court held that the mere proximity of her passage to this puddle was enough to allow the case to defeat summary judgment. So here we do have some circumstantial evidence that we will need to rely upon, but we also have direct evidence and many, many courts have allowed summary judgments to be reversed where there was both. So this is a case, if you'd like to discuss some of the case law, much of the case law defendant relies upon is case law where the plaintiff had absolutely no idea what caused them to fall. Here defendant likens Mr. Trompler's testimony to the testimony in those cases. But here in contrast to those cases where a plaintiff fell, it's very often slip and fall situations where plaintiff falls and says, I have no idea what caused me to fall. They don't even point to a defect or sometimes they point to a defect in the area but can't say whether that defect actually contributed to their fall. Here we have Mr. Trompler's very specific description of a circumstance that is extremely unusual. This is not a slip and fall case. He was driving over a railroad track and felt an extremely unusual sensation of a steering wheel being ripped out of his hands. He said violently jerked from his hands and that testimony is so different from a slip and fall where a plaintiff says, oh I don't really know what made me slip or fall. Here we have this very unusual sensation very clearly described by him. We have his very specific testimony about where he was when he felt this sensation and then we have his expert witness who says that sensation as a matter of mechanical engineering certainty is exactly consistent with what would have been felt if a vehicle's tire had lost its contact patch with the road, dipped into a hole or a gap as we describe it here, and then struck another surface and came into contact with another contact patch which here was the railroad track. It's too perfect. Mr. Trompler couldn't have known when he described the sensation that he felt in the police report. He described it himself as striking something that jerked the steering wheel from his hands. He could not possibly have known at that moment that a mechanical engineering expert would tie that to exactly what could happen if a tire went into the gap in the crossing the exact way his expert says it happened. So I think that you know that specificity of his sensations really distinguishes this case from plaintiff's cases where the plaintiff really could not say how they fell, how were they injured. In this case, I mean if you look at the evidence in the Valeriev case, the court, the woman who was descending some stairs tripped and fell and all she could say was I felt there was some unevenness in the stairs and the court said we have to take that evidence in the light most favorable to the plaintiff. And it specifically said she could only describe the sensation she felt. She didn't see exactly what happened to her feet when she fell, much as Mr. Trompler here, but they said she could describe what she felt and based on evidence as here that the steps were degraded and unsafe, that should have withstood summary judgment. So and there are you know multiple cases. The Cabernet case, which is a tragic case where a doctor tripped backwards on a mat. All the evidence he had of what happened was that he felt his foot strike what he believed to be a fold in the mat. I can tell you that promptly upon being picked up, there was no fold in the mat. There was literally no evidence that the fold in the mat existed at the time the doctor tripped on it. Even his own expert witness said I cannot say that there was a defect or a tripping hazard in that mat at the moment the doctor tripped on it. So the court focused specifically on his testimony regarding the sensation he felt, which he described as tripping on a fold in the mat. And even in that case, in contrast to this case, not only could his own expert not say there was a in the area at the time plaintiff fell, but the plaintiff himself inconsistently said he slipped. So there the court still found summary judgment was inappropriate. Here we don't have a consistent testimony from Mr. Trompler and his expert witness has been able to say I mean it's unrefuted this roadway was in terrible condition. There are dozens of photographs, there's video before the accident and after the accident. So we have abundant evidence that the roadway was in a defective and we have no conflicting evidence about what happened to Mr. Trompler. So I feel that the evidence here is so much greater than the evidence in many other cases where summary judgment was found inappropriate and that Mr. Trompler should be allowed to proceed with this case. And the jury can weigh the strength of his expert testimony. The jury can weigh the credibility of his own appellee brief focuses on fact issues like expert credibility, sufficiency of the evidence, weight of the evidence. And those are issues that are just not appropriate for summary judgment. In a way the court has an easy job because we're not asking you to weigh evidence, we're asking you not to weigh evidence. And we're asking you to find if there's any disputed fact issue that jury should decide. And here proximate cause is a classic fact issue and we have presented sufficient evidence that should go to a jury. Are there any other questions for Ms. Bartolucci? Not for me. Seeing none. Mr. Russell, good afternoon. Good afternoon Justice McLean. May I proceed? Yes you may. Good afternoon also to Justice Peterson and to Justice Brennan. My name is Patrick Russell and the attorney representing the appellee Union Pacific Railroad. Union Pacific is going to acknowledge that the issue of proximate cause is normally an issue of fact. But in this matter before this court it was properly decided under the circuit court is falling under the exception of when there is no direct evidence of causation and insufficient circumstantial evidence to infer that Union Pacific's negligence was the proximate cause of appellant's injuries that summary judgment is proper and that the case should not proceed to trial. As this court is well aware from the briefing and the arguments, Mr. Trompler himself speculated he hit something. The responding police officer said something struck his vehicle and blew out the tire. Mr. Lumiere, the appellant's expert admitted no one will know what happened here because the the tire and the sweeper truck themselves were not preserved by the appellants and were not analyzed to see if there were any defects or any issues with either the tire or any of the components of the sweeper vehicle. Therefore under Illinois law the appellants failed to meet the burden of production and the circuit court correctly granted summary judgment. And before I go into a little bit of what I had prepared just to address the question that Judge Brennan raised in terms of is the evidence circumstantial evidence or direct evidence, the evidence as to causation here is purely circumstantial. Mr. Trompler's testimony was not clear direct evidence of what happened. As cited in the briefs his testimony at deposition was I have no idea what happened. He said it felt like something reached out and grabbed his tire but he said I have no idea what happened here. And so that right there is his testimony and to connect that it absolutely has to require circumstantial evidence and the standards are clear. We aren't arguing that this is a case where there's only one inference. The point is when you're relying on circumstantial evidence it has to be more probably true than not true that that inference is in fact what satisfies the causation standard. And here there are equally possible options on what could have happened here to cause the accident. And again on this record in terms of these arguments that FLE won't be able to show alternative causes, that's absolutely true because that evidence wasn't preserved. It is equally possible that there was some sort of defect with this sweeper truck that caused him to lose control of it, could have run out of gas, some sort of equipment could have seized up, the engine could have stopped. There is a whole host of things that we will never know, not Mr. Lumier, the expert, not any of the witnesses. It's just complete speculation on everybody's part which is why we cited to that case law in particular Burke which I will argue later is substantially similar to this case. In terms of facts that I think the court should be what is already well aware of but just to make sure we cover, the appellant's son was the only person to seen the day after the incident. The photographs show that the IDOT warning sign that the crossing would be closed for restoration within days. Our incident occurred on October 13, 2017. Those photographs were taken on October 14, 2017. Those photographs indicate that the crossing would be closed for construction on October 16, 2017. Union Pacific did not get notice of this lawsuit until October 17, 2018. Additionally, as the record reflects, Mr. Trumpler was involved in a single-car vehicle incident where he drove off into a ditch in December of 2015. Again, that might have been the case here. He might have lost control of the vehicle for a reason that isn't attributable to Union Pacific's conduct that caused this accident. Again, it would be pure more probably Union Pacific that caused this accident. That is the standard. That is the case law that is cited and its legion dating back to, I think we cited cases going back to 1993. Again, as this Third Circuit has decided in the Majetic case, when more than one conclusion can be drawn, a fact is not established through circumstantial evidence. Using circumstantial evidence to create an inference of fact, it must be the only probable conclusion. That comes from Williams. That comes from Heating. That's cited in Burke. That's cited in Barclay. Again, as stated in the FLE's brief, Lumiere's testimony is inconsistent with Trumpler's recollection as well as the police report. Under the Wilson case that was cited, that means that his opinions, his speculation as to what happened can be disregarded. That is Illinois law that says under Wilson that can be disregarded. That goes back to the Illinois Supreme Court case of Dybeck v. Weber. If an expert opinion is grounded in conjecture, it should be disregarded. That is also echoed in McCain v. Motorola case. Direct words from Mr. Lumiere, a more definite conclusion of the events that day would require a complete accident reconstruction. Such a reconstruction cannot be performed due to the lack of necessary data, specifically due to the crossing being fully replaced days after the occurrence at issue. That's not from Union Pacific's expert. That is from plaintiff's reconstruction expert, Mr. Lumiere. The Burke court addressed these issues directly. In the absence of direct evidence, expert opinions can be no more than speculation. As the Barclay court stated, this is only a possibility of what happened. Again, the appellants tried to distinguish this case from Burke, but it is factually analogous. There is no direct evidence of what caused Mr. Trompler to lose control of his vehicle. Like the Burke case, there was a reliance on the physical characteristics of the area and the assumption that it was unreasonably dangerous, which I will add, which is in our briefs. IDOT controlled the construction of this area. IDOT can close a crossing before the construction begins if it's deemed too unsafe for public at the time of Mr. Trompler's accident. To suggest that this was an unreasonably dangerous crossing where cars could be flying off left and right wasn't borne out by the evidence, because there was only one vehicle, Mr. Trompler's vehicle, that lost control of this crossing. The evidence produced in this case was that there were no prior accidents at this crossing. Again, the focus of the brief was on causation, because that is a hurdle that the appellants can't get over. And again, as the circuit court correctly said, yes, a trier of court could infer that Union Pacific's conditions of the crossing caused this, but it is equally possible to infer something else caused the accident that was not Union Pacific's negligence, or alleged negligence. And that comes, again, directly from the Burke and the Barclay cases, that if there's equally possible options on what could have happened, that is insufficient. That invites the trier of fact, that invites the jury to speculate as to what happened, and that is just not allowed under Illinois law. And again, as to these arguments about spoliation, again, the lower court reserved on that ruling or said it was moot in light of the granting of the summary judgment. The only reason that Union Pacific brought them up in the FLE brief was because we were, again, as argued by appellant now, that Union Pacific cannot bring evidence of alternative causes. We absolutely agree. That is absolutely a fact. And that is a fact because that evidence, that after the lawsuit was initiated. So that begs the question of how Union Pacific was supposed to bring evidence of alternative causes when there were possibly dozens of potential causes contained in the evidence that was no longer available to Union Pacific. And again, reasonable inferences are allowed, but speculation is not allowed. And in the appellant's reply brief, there were two cases that weren't cited in their initial brief that I would like to briefly address with the court. The Estate of Freaks case, which was cited by Union Pacific for the point, the standard of law, the standard of review, that this court was able to affirm the judgment for not just the reasons relied upon by the lower court, but for any reason that they find within this record. And Union Pacific would advance the argument that there are numerous reasons that this judgment could be affirmed, not to say that the lower court didn't get it correct because Union Pacific believes it did. Crucially, there are three words that were never used in the Freaks opinion relied upon by appellant, causation, proximate, or cause. And that's because that case did not examine causation or proximate cause. That case involved cross motions for summary judgment, the losing party asking for an evidentiary hearing, and arguments relating to hearsay exceptions of a lost will as well as stolen will revocation procedure. The appellants failed to make any compelling arguments that the Freaks decision on its facts is analogous to the instant matter. And then the other case that was not cited in their original brief, but in their reply brief, was the Seventh Circuit case from 2014, Stuhlmacher v. Home Depot, which is also readily distinguishable from the instant matter. In that case, the plaintiff had purchased a ladder from Home Depot. He was up on the ladder trying to, I think, clean his roof or get onto his roof. And then he fell off of the ladder. In that case, the expert's opinion at trial was excluded after he testified and then directed verdict was entered for the defendant. The district or the appellate court in reversing found that that expert had sufficient facts and data. Importantly, in that case, the plaintiff suffered an injury when he fell off of a ladder sold to him. And in that case, that expert was able to analyze the ladder in issue and opine as to its defects. That's an impossibility in this case because we don't have the sweeper and we don't have the tire, so we can't analyze them for either being struck or hit by debris or something else. Yes. Mr. Russell, are you, it seems like you're arguing the spoliation issue, which we may deal with someday. I mean, I don't think that's what we're here for, but I could be wrong. No, respectfully, Justice Peterson, I'm not trying to argue spoliation. What I'm trying to argue is that in terms of alternative causes, nobody knows what happened. Nobody can say with any sort of certainty required under Illinois law, what happened that day to cause Mr. Trompler to lose control of his vehicle. Not Mr. Lumiere, not Mr. Trompler. Mr. Trompler himself said he had no idea. Mr. Lumiere said he didn't analyze any of the important considerations that would go into alternative causes, such as the sweeper itself, as in the tire, as in the crossing. Mr. Lumiere himself said he didn't have an opportunity and it would be impossible to, because the crossing wasn't in the same condition anymore. And so there are just all these equally possible reasons that Mr. Trompler lost control of his vehicle. And ultimately the burden of proof is on Mr. Trompler to establish that he can show Union Pacific's negligence was the cause, in fact, the proximate cause of the accident. And on this record, there's just insufficient evidence. Are you finished? I think I'm close to out of time, but again, I would argue that this case is factually analogous to the cases relied upon in Nathalie's brief. And I would like to thank the court for your time and letting me make this oral argument. Thank you, Mr. Russell. Are there any further questions for Mr. Russell before we move on? No. Okay. Ms. Bartolucci, any rebuttal? Yes, thank you. And I apologize for my coughing. I was warned if I mute myself, though, it could really mess things up. So I'm very sorry. I have a cold today. I just want to mention or address the contention by the defendant that there are dozens of equally plausible causes for this accident. Well, there aren't, but even if there were, as the case law tells us, if there is even one inference that is consistent with the plaintiff's theory, summary judgment should not be granted. And here, as the circuit court itself acknowledged, there is one inference that can be drawn from the evidence here that the accident happened because of the deteriorated condition of the roadway. I also want to go to refute what defendant said about Mr. Lumier, plaintiff's expert. Actually, Mr. Lumier, despite acknowledging that he didn't have the sweeper to inspect and he didn't have the roadway to inspect, he said, based on voluminous evidence that he did review, his explanation of the mechanical mechanisms that were at play, the eccentric forces that could cause a steering wheel to be jerked from a driver's hands, based on his expertise as a mechanical engineer, he said that was the only plausible explanation he could see for how the accident occurred. So we do have expert testimony saying this is the only plausible explanation based on the evidence. Defendant, it's almost humorous to me that they bring up the fact that Mr. Trumpler swerved once to avoid a deer. We have no evidence that anything like that happened here. If Mr. Trumpler had seen a deer, he would have said so. He testified very, very clearly that he had a very good memory of that morning, all the events of that morning, including as he was crossing the railroad crossing. So, I mean, he has a very strong memory about what happened and he has a very strong memory of the sensations he felt. And that's what distinguishes this case from the many cases where a plaintiff literally said, I don't know. I don't know what happened. They had no sensation they could describe that tied to the actual physical condition of the premises they were at at the time. And that's very significant. And also, counsel misstated the burden of persuasion on summary judgment. He said, we right now have to prove it's more probable than not that this is what caused the accident. That is the trial burden. Here, we just have to show whether a disputed fact issue exists. And we absolutely have. Defendant has provided no indication of a fact that's in dispute. They only challenged what reasonable minds could conclude based on the fact. And here, reasonable minds like the circuit court judge herself and like plaintiff's expert could conclude that the deteriorated condition of this roadway caused the accident. It's completely plausible. It's not speculative. And Mr. Trompler's very specific testimony distinguishes it from cases where plaintiffs really had no idea whether they even encountered a slippery or dangerous surface or substance. Here, he definitely encountered a dangerous surface. And that was well documented. Your Honor, do you have a question? I do. Isn't the problem here that although there are a number of possibilities or probabilities that you argue may preclude summary judgment, there isn't anything available that would prove one or the other of those was the actual cause if it comes to trial. Isn't that correct? No, I disagree with that, Your Honor. I agree with that. I agree with what Mr. Trompler said. I agree with what he felt coupled with direct physical proof of the condition of the roadway in terms of we don't have the roadway itself, but we have photographs taken and video taken before the accident. August 24th, 2017, IDOT was out there, videotaped the deteriorated condition, photographed the deteriorated condition. The day after the accident, Mr. Trompler's son photographed and videoed the deteriorated condition. That evidence before and after the accident coupled with his very wheel being jerked violently from his hands, that is not a common occurrence. I've never had that happen to me, I don't think. Not that that's relevant, but it's not a common occurrence. It's not a trip and fall case. He had a very unusual sensation that a mechanical engineer can tie directly to what would happen if a tire encountered a roadway surface exactly as the one here. So no, I don't think that a jury will be left to speculate at all. Yes, they will have to inferences from the evidence, but this is a reasonable inference from the evidence, and the circuit court judge admitted it. She acknowledged there may be a possible inference here that the condition of the roadway caused the accident, but my tire blew out once, and so that could have happened. I mean, it was improper, holy for the trial court judge to throw out reasons that this could have happened when there's no evidence, despite the spoliation argument, which I agree with Justice Peterson is not proper in this court at this procedural juncture. The evidence, there could have been evidence of other causes of this accident. There could be many other causes, but there was no evidence of anything other than the condition of the roadway to explain the jerking of the steering wheel that Mr. Trompler experienced. My time is up, so I hope that answered your question. Are there any other questions for Ms. Poliglucci? No. Okay, we thank you both for your arguments this afternoon. We'll take the matter under advisement, and we'll issue a written decision as quickly as possible.